IN the Matter of the ESTATE OF
Clarence A. STEPHAN, Deceased.

No. 45A03–8908–CV–340.

Court of Appeals of Indiana,
Third District.

Feb. 21, 1991.

Rehearing Denied March 20, 1991.

Patrick J. Galvin, Galvin, Galvin & Lee-
ney, Hammond, for appellant.

Joseph S. Van Bokkelen, Timothy G.
Kline, Goodman Ball & Van Bokkelen, Pro-
fessional Corp., Highland, for appellee.

STATON, Judge.

Margaret Stephan appeals from a trial
court order resulting from a petition to
construe the will of her deceased husband,
Clarence A. Stephan.

Margaret presents three issues on appeal
which we restate as:

1. Whether the trial court correctly con-
strued the disposition of an inter-vivos
trust, incorporated by reference into
the will?

2. Whether the trial court should have
considered the affidavit of John F.
Beckman, the attorney who drafted
Clarence Stephan's will, in order to
determine intent?

We affirm.

This appeal arose from a Petition to Con-
strue Will filed by First National Bank of
East Chicago, Indiana, as Successor Execu-
tor of the estate of Clarence A. Stephan.
Clarence's widow, Margaret, and his son,
Gregory, each filed a memorandum on the
Petition to Construe Will. The parties dis-
agree on the disposition of a trust which
was incorporated into the will by reference.
The trial court ordered as follows:

1. The Successor Executor shall forth-
with exercise the power of discretion,
devolved upon it by operation of the
Trust Agreement, to direct the Trustee
to convey the Trust res to the Estate of
the decedent, submit a final accounting
and terminate the trust.

2. Upon title to the Trust res being
perfected in the Estate, the Successor
Executor shall cause that property to
pass to Gregory and Jerelee pursuant to
the terms of the residuary clause of the
decedent's Will.

3. The specific bequest to Margaret in
the Decedent's Will of one-half of his
beneficial interest comprises only one-
half of the first $1,500.00 per month rent
from and after May 14, 1984. All sums

monthly in excess of $1,500.00 shall pass directly to Gregory and Jerelee pursuant to the terms of the Property Settlement Agreement and the Decree incorporated into the Trust Agreement.

4. A constructive trust is hereby imposed upon all funds received by the Estate from the lessee of the Trust res from and after March 15, 1984, for which the Estate shall account in writing to the Court, and which funds it shall then distribute, with accrued interest, in accordance with the preceding rhetorical paragraph of this Order.

Record at 309–310. Margaret appeals from this Order.

## I.

### Trust

The issue in dispute concerns the disposition of an inter-vivos trust incorporated by reference into Clarence A. Stephan's will. The trust was created in compliance with a property settlement agreement between Clarence and his ex-wife, Geraldine Stephan. Geraldine and Clarence were divorced on May 9, 1972; they had two children, Gregory and Jerelee. A property settlement agreement was incorporated into their divorce decree and provided for the creation of a trust as security for Clarence's payment to Geraldine of $216,000.00 over a twelve year period. On the same day that the divorce decree was issued, May 9, 1972, Clarence executed a trust agreement designated as Trust No. 1200 (Trust). The trust consisted of property which was leased to C.E. Stephan, Inc. The First Bank of Whiting, as trustee, was given legal title to the property and was assigned the lease.

The dispute between the parties revolves around the disposition of the trust property. We must first look to the trust agreement which clearly sets out its purpose as follows:

The land trust created by this agreement is established for the purpose of providing security for the payment of alimony to GERALDINE STEPHAN in the total sum of Two Hundred Sixteen Thousand Dollars ($216,000.00) in equal monthly installments of One Thousand, Five Hundred Dollars ($1,500.00) each over a period of twelve (12) years, first payment being due and payable on the 15th day of May, 1972, and this agreement shall at all times be construed accordingly. Said alimony is provided for by a certain property settlement agreement between Geraldine Stephan and Clarence A. Stephan, which agreement has been approved and incorporated as part of their divorce decree....

Record at 66.

The trust agreement designated Geraldine and Clarence as beneficiaries. It defines their interest as:

The following named persons shall be entitled to the earnings, avails and proceeds of said real estate as follows, to-wit:

1. *Geraldine Stephan*, the first Fifteen Hundred Dollars ($1,500.00) each month in accordance with paragraphs 3(d) and (e) of a certain property settlement agreement between *GERALDINE STEPHAN* and *CLARENCE STEPHAN*, a copy of the pertinent paragraphs of said agreement being attached hereto and made a part hereof.

2. *CLARENCE A. STEPHAN*, the balance of all earnings, avails and proceeds.

Record at 63. Section 3(e) of the property settlement agreement incorporated into the trust made Gregory and Jerelee beneficiaries by providing that:

Any income received by the Trustee in excess of the Fifteen Hundred Dollars ($1,500.00) per month shall be paid to Husband, and *upon his death, such excess shall be paid to the parties (sic) two children in equal shares.*

Record at 298 (our emphasis).

Although the trust agreement has no single termination clause it discusses termination under several scenarios. The intent behind each of these scenarios is to insure that the payments to Geraldine required by the property settlement agreement are

made. These scenarios allow termination of the trust once that purpose has been achieved. The trust agreement does not discuss termination if payments are made on the twelve year schedule; however, it is clear from the terms of the trust that once Geraldine received the full amount set out by the property settlement, the purpose of the trust was accomplished.

Termination of a trust, when not occurring through the terms of the document, is governed by IC (1971) 30-4-3-24 (Burns Code Ed., Supp.1990), which provides in relevant part:

(a) On petition by a trustee or beneficiary, the court may, in its discretion, terminate the trust:

(1) if the purpose of the trust has been fulfilled or has become illegal or impossible of fulfillment....

(b) the court shall include in its order under subsection (a) of this section a provision making such a distribution of the trust estate as the court deems most nearly in conformance with the settlor's intent.

■ Clarence died on March 9, 1983. A little over a year later, on April 15, 1984, the final payment to Geraldine was made. At this time the trust purpose was satisfied. Indiana law requires that the purpose of a trust be reasonably ascertainable. IC (1971) 30-4-2-1 (Burns Code Ed., Supp. 1990). When the trust purpose has been satisfied the trust may be terminated. The trial court properly terminated the trust.

■ With this in mind we turn to the provisions of Clarence's will. Two clauses of the will are the source of the disagreement between the parties. Those clauses provide:

### ARTICLE V.

#### Specific Requests

.      .      .      .      .

I give and bequeath to my Wife, MARGARET L. STEPHAN, a one-half (½) interest in my beneficial interest in the real estate trust known as First Bank of Whiting Trust Number 1200 created un-der a certain trust agreement dated the 9th day of May, 1972.

### ARTICLE VI.

#### Devise and Bequest of Residuary Estate

All the rest, residue and remainder of my estate, both real and personal, of whatsoever kind and wheresoever located, which I may own or have the right to dispose of at the time of my death, I give devise and bequeath to my son, GREGORY L. STEPHAN and my daughter, JERELEE STEPHAN, equally, share and share alike. In the event of the death of either or both of my said children prior to my death, the issue of such deceased child shall the share the parent would have taken if living.

Record, p. 8, 9.

Margaret contends that she is entitled to a one-half interest in the trust res. The language of the specific bequest, however, clearly states that she is entitled to one-half of Clarence's *beneficial* interest in the trust. Thus, it is our task to ascertain the nature of Clarence's beneficial interest in the trust. We are aided by the terms of the trust:

IT IS UNDERSTOOD AND AGREED between the parties hereto and by any person or persons who may become entitled to any interest under this trust, that the interest of any beneficiary hereunder shall consist solely of a power of direction to deal with the title to said property and to manage and control said property as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said premises, and that such right in the avails of said property shall be deemed to be personal property, and may be assigned and transferred as such; that in the case of the death of any beneficiary hereunder during the existence of this trust, his or her right and interest hereunder shall, except as herein otherwise specifically provided, pass to his or her executor or administrator, and not to his or her heirs at law; and that no beneficiary now has, and that no beneficiary hereunder at any time shall have

any right, title, or interest in or to any portion of said real estate as such, either legal or equitable, but only an interest in the earnings, avails, and proceeds as aforesaid.

Record at 63 (emphasis in original). Thus Clarence's beneficial interest consisted of a management interest in the property and the right to receive the income from the property. Clearly, while Clarence's debt to Geraldine was still outstanding, she also had a beneficial interest of $1,500 per month of the total monthly income from the trust res, the balance of which was to be paid by the trustee to Clarence. Upon Clarence's death, while the debt was still outstanding, Gregory and Jerelee were to receive the excess pursuant to the property settlement agreement incorporated into the trust documents.

Gregory and Jerelee's remainder interest, however, was specifically defined by the property settlement agreement to consist of only the *excess* of the trust income over $1,500 per month. Thus, Clarence's beneficial interest in the trust transferable at his death only included the first $1,500 of income of the trust after the debt to Geraldine was discharged, plus his management interest in the trust res during the term of the trust. The trust has been terminated; the management interest is no longer relevant to our consideration. Pursuant to Clarence's will, Margaret is entitled to a ½ interest in the first $1,500 of income of the trust from and after May 15, 1984, as provided in the trial court's order. We find no error.

## II.

### *Testator's Intent*

■ As for Margaret's contention that the affidavit of John Beckman should have been considered by the trial court on the issue of Clarence's intent, we agree with the trial court that the will is unambiguous. Although the parties argue application of the dead man's statute at IC (1881) 34-1-14-6 (Burns Code Ed., Supp.1990), we need not discuss that issue. If a will is unambiguous, the intention of the testator will be determined from the four corners of the instrument. *Forth v. Forth* (1980), Ind. App., 409 N.E.2d 1107, 1113. The trial court correctly refused to consider Beckman's affidavit.

Affirmed.

HOFFMAN, P.J., concurs.

RATLIFF, C.J., dissents and files separate opinion.

RATLIFF, Chief Judge dissenting.

The trust agreement specifically provides "[t]he land trust created by this agreement is established for the purpose of *providing security* for the payment of alimony ..." (emphasis added). Thus, in reality, the so-called trust was not a trust at all, but was a security device to secure the payments due to Geraldine. Thus, Clarence did not divest himself of ownership of the corpus, he merely encumbered it. That Clarence did not divest himself of ownership of the property is further evidenced by the provisions in the so-called trust agreement granting him full management of the "trust" property, and by the provision giving him a right to demand a return of the property upon posting sufficient funds to insure payment of the moneys due to Geraldine. Therefore, upon Clarence's death, the corpus, subject to whatever encumbrance remained, passed under his will, one-half to his wife Margaret under the specific bequest to her, and the remaining one-half to his two children, Gregory and Jerelee, under the residuary clause of Clarence's will. For the reasons stated, I respectfully dissent.